Filed 3/8/23  P. v. Gamez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROLANDO GUADALUPE GAMEZ,<br><br>    Defendant and Appellant. | D079200<br><br><br>(Super. Ct. No. FBA1100613) |

APPEAL from an order of the Superior Court of San Bernardino County, Rodney A. Cortez, Judge.  Affirmed.

Aaron Spolin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Steve Oetting and Anthony Da Silva, Deputy Attorneys General for Plaintiff and Respondent.

Rolando Guadalupe Gamez appeals the summary denial of his petition for resentencing under former Penal Code section 1170.95 (now section

1172.6)[1] based on changes to the felony-murder rule and the natural and probable consequences doctrine under Senate Bill No. 1437 (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019). He contends the superior court's failure to issue an order to show cause and grant him an evidentiary hearing was not harmless error, and its order should be reversed. Because the appellate record was not clear on whether the court appointed counsel at Gamez's request on his section 1172.6 petition, we asked the parties to provide supplemental briefing on that question, and whether, if the court did not appoint counsel, that omission was prejudicial error under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).

Having reviewed the supplemental briefing, we hold the trial court erred by failing to appoint counsel at Gamez's request (§ 1172.6, subd. (b)(3)) and solicit the People's briefing (*id.*, subd. (c)), but the error is harmless as Gamez is ineligible for section 1172.6 relief as a matter of law. We therefore affirm the order denying Gamez's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*

We previously set forth the facts underlying Gamez's convictions in our unpublished opinion in *People v. Jimenez* (Jan. 15, 2015, D066212). We need not repeat them in detail here. It suffices to say that in May 2009, Gilbert Chavez was found dead in a desert area of Barstow Heights with gunshot wounds to his wrist and the back of his head. The night before, witnesses saw Chavez leave a party in a Nissan Altima with Claudio Rolando Jimenez, Tomas Quintana, and Gamez, who were armed with a shotgun and .38-

---

[1] Undesignated statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no substantive change in text. (Stats. 2022, ch. 58, § 10.) We refer to the statute throughout as section 1172.6.

caliber revolver. Tire impressions at the site of Chavez's body, which was less than a mile away from the party location, could have been consistent with the Nissan Altima. One of the individuals who was in the vehicle later told a detective how the murder happened—explaining that Jimenez shot Chavez twice with a .38-caliber revolver—and that the situation occurred due to a "political beef" in the men's criminal street gang.

To the extent additional underlying facts from the record are necessary to address Gamez's contentions, we set them out below.

B. *Procedural Background*

The People charged Gamez with first degree willful, deliberate and premeditated murder (§ 187; subd. (a); count 1); conspiracy to commit murder (§ 182, subd. (a); count 2); and active participation in a criminal street gang (§ 186.22, subd. (a); count 3). They alleged as to count 1 that a principal personally used a firearm (§ 12022.53, subds. (b) & (e)(1)), personally and intentionally discharged a handgun (§ 12022.53, subds. (c) & (e)(1)), and personally used and discharged a handgun, proximately causing injury and death to Chavez (§ 12022.53, subds. (d) & (e)(1)). They alleged that both counts 1 and 2 were punishable in state prison for life and section 186.22, subdivision (b)(5) applied.

In 2012, a jury convicted Gamez of the charged first degree murder, conspiracy to commit murder, and active participation in a criminal street gang. It found true all of the firearm and gang allegations made as to counts 1 and 2. The court sentenced Gamez to 3 years plus 50 years to life in prison, consisting of 25 years to life for the count 1 murder, a consecutive term of 25 years to life for the personal firearm use allegation, a stayed term of 25 years to life for the count 2 conspiracy, and a consecutive three-year determinate

3

upper term on count 3.  Following the appeal to this court (see *People v. Jimenez*, *supra*, D066212), the court vacated the count 3 sentence.

In 2021, Gamez, representing himself, filed a lengthy petition for resentencing under section 1172.6.  In part, he alleged a complaint or information was filed against him in 2011 that allowed the prosecutor to proceed under the theory of felony murder or murder under the natural and probable consequences doctrine, and/or under the theory that he aided and abetted the crime by his presence at the crime scene and/or his association with the shooter.  He alleged he was convicted of first degree murder "pursuant to either aiding and abetting the crime, felony murder rule or the natural and probable consequences doctrine, which was argued to the jury by the prosecutor" and that "he could not be now convicted of either [first] or [second] degree murder based on the changes made retroactive under . . . sections 188, and 189."  (Capitalization omitted.)  He requested the court appoint him counsel.

In the petition, Gamez stated:  ". . . I was not the actual shooter in this case, that the record shows and testimony of other witnesses at trial demonstrated who the shooter was, as well as the cooperating witness with the police in this matter shows this particular important fact, which will demonstrate by the prosecutor's arguments to the jury and the jury instructions that [I] in fact qualify under either theory as argued by the prosecutor in this case."  (Some capitalization omitted.)  He also stated:  ". . . I did not, with intent to kill, aided, abetted [*sic*], counsel, commanded [*sic*], induce, solicit, request, or assist the actual killer in the commission of the murder in the first degree."  (Some capitalization omitted.)  He further stated:  "I was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime or felony

4

based on the record as to how the crime was committed and my mere presence during the events, without any showing that I did so [*sic*], it will show that the record, together with other, post conviction discovery being obtained . . . that I am not the killer [*sic*], that my mere presence, absent any other showing of the violation of the requirements in . . . sections 188, and 189, I do qualify [*sic*] for the legal relief being requested in this petition for resentencing  . . . . under section [1172.6] et seq." (Some capitalization omitted.)

Though an April 2021 minute order states Gamez retained counsel James Terrell for the matter, the minute order for the next hearing in June 2021 states that Terrell was not retained, and the court relieved him as counsel for Gamez.

On June 21, 2021, at a hearing at which neither the district attorney nor Gamez were present, the court summarily denied Gamez's 1172.6 petition.  In its ruling, the court acknowledged Gamez would be entitled to an evidentiary hearing if he presented a prima facie showing—a reasonable likelihood based on issues of fact—he was eligible for relief under section 1172.6.  Reviewing the record of conviction and this court's opinion, it found Gamez was "a principal and co-conspirator to the murder and was neither convicted under the felony murder rule nor the natural and probable

consequences doctrine."[2]  Accordingly, it ruled Gamez's "conviction falls outside the text and parameters of [Senate Bill No.] 1437."

Gamez appeals from the court's order.

## DISCUSSION

### I. *Legal Principles*

Senate Bill No. 1437, effective January 1, 2019, "amend[ed] the felony[-]murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v.*

---

[2]  The court's order provides more fully:  "There are no provisions in the text of [section 1172.6, subdivision] (c) that restrict the court's analysis to the petition.  Therefore, in making a determination as to whether or not petitioner has established a prima facie basis for relief, this court may conduct its own independent review of the pertinent portions of the court file, including the complaint, information, verdict forms and '[C]ourt of [A]ppeal opinion, whether or not published, is [*sic*] part of the appellant's record of conviction.'  [Citation.]  [¶]  'The plain language of section [1172.6], subdivision (a) limits relief to persons "convicted of felony murder or murder under a natural and probable consequences theory [to] fil[ing] a petition with the court . . . ." '  [Citation.]  Thus, no language in . . . [section 1172.6] references relief to persons convicted as a principal to murder.  [¶]  In the present case, petitioner was determined to be a 'principal in the murder' of the victim as evidenced by the jury instructions, facts contained in the probation officer's report, the abstract of judgment, verdict forms, and particularly the facts set forth in the unpublished Court of Appeal decision in petitioner's case.  . . .  [¶]  The appellate court concluded the evidence at trial collectively supported an inference that the parties, including Gamez, positively or tacitly came to a mutual understanding to murder the victim."  (Some capitalization omitted.)

6

*Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).) "[S]ection 189 . . . now limits liability under a felony-murder theory principally to 'actual killer[s]' (. . . § 189, subd. (e)(1)) and those who, 'with the intent to kill,' aid or abet 'the actual killer in the commission of murder in the first degree' (*id.*, subd. (e)(2)). Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of . . . [s]ection 190.2'—that is, the statute defining the felony-murder special circumstance." (*Strong*, at p. 708.) The law eliminated second degree murder liability predicated on the natural and probable consequences doctrine. (*Strong*, at p. 707, fn. 1, citing § 188, subd. (a)(3) & *People v. Gentile* (2020) 10 Cal.5th 830, 842-843.)

Senate Bill No. 1437 created a procedural mechanism for those convicted under the former law to petition the trial court for retroactive relief under the amended law. (§ 1172.6, subd. (a); *Strong, supra*, 13 Cal.5th at p. 708.) "[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . [s]ection 188 or 189 made effective January 1, 2019.' " (*Strong*, at p. 708, fn. omitted.) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Ibid.*)

In *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), decided after the superior court summarily denied Gamez's petition, the California Supreme

7

Court explained the role of a court faced with a section 1172.6 petition: Petitioners who request counsel "are entitled to the appointment of counsel upon the filing of a facially sufficient petition . . . ." (*Id.* at p. 957.) "[O]nly *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.'" (*Ibid.*; see also *id.* at p. 966 ["a complying petition is filed; the court appoints counsel, if requested; the issue is briefed; and then the court makes [its] prima facie determination"].) The court's "prima facie inquiry . . . is limited. . . . ' "[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'" (*Id.* at p. 971.) Importantly, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id.* at p. 972.) "[T]he 'prima facie bar was intentionally and correctly set very low.'" (*Ibid.*; see also *People v. Porter* (2022) 73 Cal.App.5th 644, 651.)

If a defendant has made a prima facie showing of entitlement to relief, " 'the court shall issue an order to show cause.' " (*Strong, supra*, 13 Cal.5th at p. 708.) Once the court determines that a defendant has made a prima facie showing, it "must [then] hold an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill [No.] 1437. [Citation.] 'A finding that there is substantial evidence to

8

support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' [Citation.] 'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.'" (*Id.* at p. 709.) However, "Senate Bill [No.] 1437 relief is unavailable if the defendant was either the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life . . . .'" (*Id.* at p. 710.)

II. *The Superior Court Erred by Failing to Appoint Counsel and Obtain the People's Briefing*

As stated, under *Lewis*, if Gamez filed a facially sufficient petition under section 1172.6 and requested appointment of counsel, the superior court was required to appoint counsel and the People were to file briefing before the court could conduct any prima facie review. (*Lewis, supra*, 11 Cal.5th at pp. 957, 963; § 1172.6, subds. (b)(3), (c); *People v. Porter, supra*, 73 Cal.App.5th at p. 651.) Gamez asserts that he did not retain, and the court did not appoint, counsel for him despite his request for counsel in his petition. The People do not challenge his assertion.

The appointment of counsel provision is mandatory. (*Lewis, supra*, 11 Cal.5th at p. 963.) Because Gamez's section 1172.6 petition is facially sufficient, i.e., it contains all of the required language set out in section 1172.6, the court erred by summarily denying Gamez's petition for resentencing without appointing him counsel and then obtaining the People's response on the matter.

9

### III. *The Error Was Harmless Under* Watson

*Lewis* specifically addressed the prejudice standard to be applied to a petitioner's denial of his or her right to counsel at the outset of the section 1172.6 petitioning process. It held this right is purely statutory, and therefore the court's failure to appoint counsel is state law error only. (*Lewis, supra*, 11 Cal.5th at p. 973.) Accordingly, "a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." ' " (*Id.* at p. 974; see *Watson, supra*, 46 Cal.2d at p. 836.) "[T]he error in failing to appoint counsel is harmless only if we can determine that the record of conviction ' " 'contain[s] facts refuting the allegations made in the petition.' " ' " (*People v. Mejorado* (2022) 73 Cal.App.5th 562, 572, review granted Mar. 23, 2022, S273159, review dism. Oct. 12, 2022, quoting *Lewis,* at p. 971.) Although the superior court may not engage in judicial factfinding or make credibility decisions prior to issuing an order to show cause, under *Lewis*, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971.)

Gamez contends he was harmed by the court's failure to appoint counsel, as it "prevented [him] from being able to give his own testimony regarding the events in question, from arguing the elements were not met, and from otherwise demonstrating his entitlement to resentencing . . . ." He argues "[m]ore specifically" citing section 1172.6, subdivision (e) that his petition's "assertions. . . taken to be true, must be considered in light of [that section]" and that "[a]t an evidentiary hearing, and with the assistance of

counsel, it is expected that [he] would have demonstrated that he may have been convicted of the target offense of false imprisonment, by way of one example." Gamez argues the evidence shows he "did not take any action to facilitate the killing" and that "there was evidence [he] did not intend to kill and did not aid and abet the killing." Thus, he claims the court's error prevented him from "further developing the facts and putting the prosecution to its burden."

The People respond that the jury instructions establish that Gamez was not tried or convicted on a now-invalid theory of accomplice liability. They correctly point out the jury at Gamez's trial was instructed with instructions as to aiding and abetting, conspiracy, homicide general principles, first or second degree murder with malice aforethought and first degree murder (CALCRIM Nos. 400, 401, 415, 500, 520, 521), but not CALCRIM Nos. 402 or 403 relating to the natural and probable consequences doctrine, because that theory was not relied upon by the prosecution for the murder count. They also point out the jury was not instructed on felony murder and the amended information did not identify any underlying target offense. Thus, they argue, "[w]ithout an underlying felony or target offense, neither felony murder nor the natural and probable consequences doctrine would have been viable theories when appellant was convicted" and "[w]here 'no instructions were given on felony murder or murder under the natural and probable consequences doctrine,' the defendant is 'not "[a] person convicted of felony murder or murder under a natural and probable consequences theory," and he is therefore ineligible for relief as a matter of law.' "

In *People v. Medrano* (2021) 68 Cal.App.5th 177, the Court of Appeal held relief under section 1172.6 "is unavailable to a petitioner concurrently

11

convicted of first degree murder and conspiracy to commit first degree murder where both convictions involve the same victim" (*id*. at p. 179) because " 'a conviction of conspiracy to commit murder requires a finding of intent to kill . . . .' " (*Id*. at p. 184.) There, the petitioner, a participant but not the shooter in a drive-by shooting into a crowd, was convicted of two counts of first degree murder and conspiracy to commit murder. (*Id*. at p. 179.) The court instructed the jury on the natural and probable consequences doctrine, but the prosecutor argued to the jury that the defendant harbored the intent to kill even though he was not the actual perpetrator. (*Id*. at p. 183.) The Court of Appeal explained that the jury in effect found the petitioner was a direct aider and abettor of the killings, and " 'Senate Bill [No.] 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.' " (*Medrano*, at p. 183, quoting *People v. Gentile*, *supra*, 10 Cal.5th at p. 848.) Further, the *Medrano* court observed the law required an intent to kill to sustain a conviction of conspiracy to commit first degree murder. (*Medrano*, at p. 185.) Since intent to kill was an element of the conspiracy to commit murder conviction, the jury necessarily based its murder conviction on intent to kill, not on the natural and probable

12

consequences doctrine. (*Id.* at p. 185.)[3] The petitioner's conviction for conspiracy to commit first degree murder made him ineligible as a matter of law for section 1172.6 relief. (*Id.* at p. 186.)

Here, the jury was instructed that to convict on the conspiracy to commit murder in count 2, it was required to find that Gamez "intended to agree and did agree with the other defendant or . . . Quintana to commit murder" and that, "at the time of the agreement, the defendant and one or more of the other alleged members of the conspiracy intended that one or more of them would commit murder[.]" The trial court further instructed: "The People must prove that the members of the alleged conspiracy had an agreement and intent to commit murder." The prosecutor argued that Gamez was on trial for murder under two theories: aiding and abetting and conspiracy. He argued the murder was in the first degree as it was willful (meaning they "intended to kill"), deliberate and premediated: "[Jimenez] fired the gun at least two times. Gamez helped him do that. Again, getting

---

3    In part, the court reasoned: " 'Under the natural and probable consequences theory of aiding and abetting a murder, a defendant can be found guilty of murder if he or she aids and abets a crime (i.e., the target crime) and murder (i.e., the nontarget crime) is a natural and probable consequence of that target crime.' [Citation.] Here, *the target offense was first degree murder*. We know this because appellant was convicted of conspiracy to commit first degree murder. '[A] conviction of conspiracy to commit murder requires a finding of intent to kill.' " (*People v. Medrano*, *supra*, 68 Cal.App.5th at p. 182.) The court quoted *People v. Beck & Cruz* (2019) 8 Cal.5th 548: " ' "[A]ll conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder." ' " (*Medrano*, at p. 183, quoting *Beck & Cruz*, at p. 641.) The *Medrano* court found the following quote from *Beck & Cruz* applied with equal weight to the petitioner: " 'Beck and Cruz were charged with conspiracy *to murder*, not conspiracy to commit a lesser crime that resulted in murder. There is thus no possibility they were found guilty of murder on a natural and probable consequences theory.' " (*Medrano*, at p. 183, quoting *Beck & Cruz*, at p. 645.)

13

[Chavez] to the location, getting him intoxicated before and finding the location where he was at. It was deliberate. They drove out to the desert. The location was a mile away from where they were off of a dirt road and it was premediated. [¶] They picked [Chavez] up and took him to the party. They got him drunk, they took him to the desert and that's where they killed him. This was willful, deliberate and premeditated, which means . . . both defendants are guilty of first degree murder."

Considering all of the instructions together, along with the jury's guilty verdicts on counts 1 and 2, the jury necessarily found Gamez intended to kill Chavez, which was an element of conspiracy to commit murder, as well as first degree murder that did not rely on the natural and probable consequences doctrine. Under these circumstances, like *Medrano*, Gamez is not entitled to section 1172.6 relief because a jury finding of intent to kill supported the murder conviction without resort to the natural and probable consequences doctrine. (*People v. Medrano, supra*, 68 Cal.App.5th at pp. 185-186; see also *People v. Coley* (2022) 77 Cal.App.5th 539, 548; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939, review dism. Nov. 17, 2021; *People v. Cortes* (2022) 75 Cal.App.5th 198, 205 [petitioner's "jury was not instructed on any theory of liability for murder or attempted murder that required that malice be imputed to him," thus he was "ineligible for resentencing under section [1172.6]"]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 677, review granted Feb. 24, 2021, S266336, review dism., Dec. 1, 2021 [lower court's failure to appoint counsel was harmless where jury was not instructed on natural or probable consequences doctrine, petitioner was not a person convicted under a natural and probable consequences theory, and he was therefore "ineligible for relief [under section 1172.6] as a matter of law"].) In other words, the record of conviction

14

conclusively establishes the absence of a predicate for section 1172.6 relief, namely that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).)

We are not persuaded to hold otherwise by Gamez's reliance on subdivision (e) of section 1172.6. That subdivision pertains to the petitioner's resentencing and comes into play only "if the petitioner is entitled to relief pursuant to this section . . . ."[4]

In sum, Gamez is ineligible for resentencing as a matter of law. Accordingly, the court's error in failing to appoint counsel for him and summarily denying his petition is harmless.

---

[4] Section 1172.6, subdivision (e), provides: "The petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged. Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose."

## DISPOSITION

The order denying Gamez's section 1172.6 petition for resentencing is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


BUCHANAN, J.